No. 41 October 22, 2015 71

# IN THE SUPREME COURT OF THE
# STATE OF OREGON

STATE ex rel TREVOR TROY WALRAVEN,
*Plaintiff-Relator,*

*v.*

DEPARTMENT OF CORRECTIONS,
*Defendant.*

(S062747)

En Banc

Original proceeding in mandamus.*

Argued and submitted June 18, 2015.

Andy Simrin, Andy Simrin PC, Portland, argued the cause and filed the brief for the plaintiff-relator.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause and filed the brief for the defendant. With him on the briefs were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

WALTERS, J.

Peremptory writ of mandamus to issue. The Department of Corrections shall prepare a proposed release plan and submit that plan to the circuit court in accordance with ORS 420A.206(1)(a). The plan is due 45 days from the date of issuance of the peremptory writ of mandamus.

_____
\* On petition for a writ of mandamus from an order of Josephine County Circuit Court, Timothy Gerking, Judge.

**WALTERS, J.**

Relator was a youth, 14 years old, when he murdered Hull in 1998. Relator was waived into adult court pursuant to ORS 419C.352 and convicted of aggravated murder. The court sentenced relator to life imprisonment with a 30-year mandatory minimum period of incarceration. *State v. Walraven*, 214 Or App 645, 650, 167 P3d 1003 (2007), *rev den*, 344 Or 280 (2008). After relator had served roughly half of that period, he obtained a "second look" hearing under ORS 420A.203. The trial court entered a preliminary order of conditional release, but the state appealed that order to the Court of Appeals. That appeal is pending and is not the subject of this mandamus proceeding. *State v. Walraven* (CA A158001). This proceeding concerns the trial court's related "direction" to the Department of Corrections, pursuant to ORS 420A.206(1)(a), requiring it to prepare a proposed release plan. Relator sought, and this court issued, an alternative writ of mandamus ordering the department to comply with the trial court's direction or to show cause for not doing so. The department, however, contends that its obligation to comply is automatically stayed under ORS 138.160.[1] For the reasons that follow, we disagree and order the department to comply with the trial court's direction to prepare and submit a proposed plan of release.

Before we discuss the facts in this case in greater detail, we think it helpful to outline the second look process and its purpose. The second look process provides an opportunity for selected persons who were under 18 years of age at the time of the commission of an offense to have a sentencing court determine whether they should serve their original sentences or be granted conditional release. ORS 420A.203. Among the persons eligible for a second look hearing are

---

[1] ORS 138.160 provides:

"An appeal taken by the state stays the effect of the judgment or order in favor of the defendant, so that the release agreement and, if applicable, the security for release, is held for the appearance and surrender of the defendant until the final determination of the appeal and the proceedings consequent thereon, if any; but if the defendant is in custody, the defendant may be released by the court subject to ORS 135.230 to 135.290, pending the appeal."

those who, like relator,[2] were under 18 years of age at the time of the commission of the offense, who committed the offense on or after June 30, 1995, and who were sentenced to a term of imprisonment of at least 24 months following waiver into adult court pursuant to ORS 419C.352.[3] ORS 420A.203(1)(a).

The second look process entails two steps, and an appeal is permitted at each one. At the first step, a sentencing court holds a hearing and considers whether an eligible person is entitled to conditional release. ORS 420A.203(4). At the second step, the court adopts a release plan and enters a final order of conditional release. ORS 402A.206.

The first step of the second look process is set out in ORS 420A.203. It begins when the Department of Corrections files a notice and request for a second look hearing.[4] The department is required to file such a notice "[n]o more than 120 days and not less than 60 days before the date on which a[n eligible] person has served one-half of the sentence imposed * * *." ORS 420A.203(2)(a). The sentencing court must then schedule a hearing "not more than 30 days after the date on which the [eligible] person will have served one-half of the sentence imposed or such later date as is

---

[2] The state informs us that it will argue in its appeal to the Court of Appeals that relator is not eligible for a second look hearing. That issue is not before us, and we do not consider it.

[3] ORS 419C.352 provides:

"The juvenile court, after a hearing, except as provided in ORS 419C.364 or 419C.370, may waive a youth under 15 years of age at the time the act was committed to circuit court for prosecution as an adult if:

"(1) The youth is represented by counsel during the waiver proceedings;

"(2) The juvenile court makes the findings required under ORS 419C.349 (3) and (4); and

"(3) The youth is alleged to have committed an act or acts that if committed by an adult would constitute one or more of the following crimes:

"(a) Murder or any aggravated form thereof under ORS 163.095 or 163.115;

"(b) Rape in the first degree under ORS 163.375 (1)(a);

"(c) Sodomy in the first degree under ORS 163.405 (1)(a); or

"(d) Unlawful sexual penetration in the first degree under ORS 163.411 (1)(a)."

[4] If the eligible person is in the physical custody of the Oregon Youth Authority, then the Authority is required to file the notice. ORS 420A.203(2)(a).

agreed upon by the parties." ORS 420A.203(2)(b). The parties to the proceeding are the eligible person and the state. ORS 420A.203(3)(a). At the hearing, the eligible person has the burden of proving by clear and convincing evidence that the person has been rehabilitated and reformed; that, if conditionally released, the person would not be a threat to the safety of the victim, the victim's family, or the community; and that the person would comply with the release conditions. ORS 420A.203(3)(k). At the conclusion of the hearing, the court may order one of two dispositions under ORS 420A.203(4)(a): (1) under subparagraph (A), that the person serve the entire remainder of the sentence of imprisonment, or (2) under subparagraph (B), that the person be conditionally released under ORS 420A.206 at such time as the court may order. To issue a preliminary order of conditional release under ORS 420A.203(4)(a)(B), the court must find that the eligible person has been rehabilitated and reformed, is not a threat to the victim, the victim's family, or the community, and will comply with the conditions of release.

The state, as well as the eligible person, may appeal a preliminary order of conditional release entered under ORS 420A.203. ORS 420A.203(6). The appellate court's review is limited to claims that the disposition is not authorized by ORS 420A.203, that the court failed to comply with the requirements of that section, or that the court's findings are not supported by substantial evidence in the record. *Id*.

The second step of the second look process is set out in ORS 420A.206. When a sentencing court determines that conditional release is appropriate, ORS 420A.206(1)(a) requires the court to direct the department to prepare and submit a proposed release plan. The department must prepare and submit such a plan no later than 45 days after receipt of the court's direction to do so:

> "If, after the hearing required by ORS 420A.203, the court determines that conditional release is the appropriate disposition, the court shall direct the Department of Corrections to prepare a proposed release plan. The Department of Corrections shall submit the release plan to the court no later than 45 days after receipt of the court's direction to prepare the plan."

ORS 420A.206(1)(a). If the court does not approve the proposed release plan, then the court must return the plan to the department with recommended modifications and additions, and the department must submit a revised plan. ORS 420A.206(1)(b). If the court does not approve the revised plan, then the court may make any changes that the court deems appropriate and prepare a final release plan. ORS 420A.206(1)(c). When the court has approved a final release plan, the court shall enter a final order conditionally releasing the eligible person. ORS 420A.206(2).

The state, the department, and the eligible person may appeal from a final order of conditional release. ORS 420A.206(6)(a). The appellate court's review is limited to claims that the court failed to comply with the requirements of law in ordering the conditional release. *Id*. The person conditionally released remains within the jurisdiction of the sentencing court for the period of the conditional release. ORS 420A.206(3)(a).

In this case, the department did not file the notice that would have initiated a second look proceeding on its own initiative or at relator's request. Consequently, relator submitted a motion to the sentencing court asking that it conduct a second look hearing. When the court denied that motion, relator filed two petitions in this court for writs of mandamus—one directed to the department and the other to the circuit court. This court issued alternative writs of mandamus to both respondents. The sentencing court agreed to schedule the hearing, relator moved to dismiss both writs, and this court granted those motions.

Pursuant to ORS 420A.203(3), the sentencing court held a second look hearing on September 11 and 12, 2014. The court took testimony from 13 witnesses and made the following findings:

> "The witnesses, I think one witness *** characterized Mr. Walraven as a unique young man who has greatly profited from his years in incarceration. And I would say that not only he has profited by taking the right course after his incarceration by seeking every conceivable means of bettering himself, he's also bettered the lives of those who have been around him and those that he is concerned for.

In that regard we heard testimony from former inmates, educators, psychologists, staff at the Oregon Department of Corrections, many of these folks testified that they had agreed to testify totally voluntarily. They weren't under subpoena, and that they have never testified before in a proceeding of this nature. They've never testified on behalf of an inmate before. Nevertheless they had agreed to come forward because they felt so strongly that Mr. Walraven deserved this second look and deserves this, this conditional release that he's requesting. And these folks have come forward because of all of the various things that Mr. Walraven has done during the course of his incarceration to better himself and the lives of others around him by obtaining his high school diploma, * * * by being involved in this Lifer's Club, becoming [its] youngest president which he is now in his second term, by gaining the trust and confidence of the prison system, by placing him in the laundry where he has achieved kind of a second in command responsibility. And during that period he's acquired mechanical skills, electrical skills, computer skills, he's worked in the Inside Outside Program as a teaching assistant, and he's also been involved in co-teach, co-teaching several of the classes. He's been in the Family First Program, parenting classes, the Freedom Road Program, he helped teach a course on divided society as a teaching assistant. He was involved in the ACE Program, the Another Chance at Education. He took a class on non-violent communication skills in which he had to, I believe[,] come to terms verbally with the crimes that he's committed. He's even head of a grant writing team to assist some of these programs in getting [the] financial aid so that those programs can continue. He's served as a positive influence in the life of his * * * former girlfriend's daughter * * *. And he's been an informal mentor for many of the inmates in the institution. These are all extraordinary achievements. So * * *, I can only conclude that Mr. Walraven is unique. He's unusual, remarkable in regard to the efforts he's displayed to make himself a better person, and * * * to help others."

The court further explained:

"I thought of one other factor that the Court should consider[,] and that is for those inmates, for those juveniles who are still in prison. What kind of message would be sent to them if Mr. Walraven is not granted the relief requested? I mean if not him, then who would be eligible?"

On September 15, 2014, the court signed an order that included each of the findings required by ORS 420A.203(4)(a)(B) and recited that the court had "determined by clear and convincing evidence that conditional release is the appropriate disposition* * *." "[I]n accordance with ORS 420A.206(1)(a)," the court also directed the department to prepare a proposed release plan and submit it to the court no later than 45 days following the completion of the hearing. The court provided that the recommended release date for relator would be "immediately following the Court's approval of [relator's] final release plan as provided in ORS 420A.206 and entry of the Court's Final Order of Conditional Release."

On October 15, 2014, the state filed a notice of appeal, citing ORS 420A.203(6) as the basis for appellate jurisdiction. As noted, that subsection permits the state to appeal a preliminary order of conditional release entered under ORS 420A.203.

On October 30, 2014, counsel for relator contacted counsel for the department to inquire whether the release plan required by ORS 420A.206 would be forthcoming. The department responded that it was not required to prepare a release plan because the state had appealed the preliminary order of conditional release and, the department contended, its obligation to prepare a release plan was automatically stayed under ORS 138.160.

Relator then filed a petition for a writ of mandamus in this court, and we issued an alternative writ directing the department to comply with the sentencing court's order or show cause for not doing so. The department did not submit a release plan; it continues to assert that its obligation to do so is stayed by operation of law under ORS 138.160.

We begin our analysis with the text of ORS 138.160:

"An appeal taken by the state stays the effect of the judgment or order in favor of the defendant, so that the release agreement and, if applicable, the security for release, is held for the appearance and surrender of the defendant until the final determination of the appeal and the proceedings consequent thereon, if any; but if the defendant is in custody,

> the defendant may be released by the court subject to ORS 135.230 to 135.290, pending the appeal."

The state contends that that statute is a statute of general applicability and that it provides for an automatic stay in all criminal cases in which the state is the appellant. Relator contends that the automatic stay provided by that statute is limited to criminal appeals authorized in ORS chapter 138—the chapter in which it is located—and, more specifically, to appeals by the state that are authorized by ORS 138.160.

Relator explains that ORS 138.160 is not the source of the state's authority to appeal a preliminary order of conditional release entered pursuant to ORS 420A.203. That authority is found, instead, in one of the second look statutes, ORS 420A.203(6). That statute permits the state to appeal a preliminary order of conditional release, but neither that statute nor any other provision in the second look statutes provides for a stay during the pendency of a state's appeal. Relator contends that, when the legislature enacted ORS 138.160, it did not intend the automatic stay provided in that statute to apply to orders entered in second look proceedings, which did not exist at that time. The legislature enacted the automatic stay provision currently codified as ORS 138.160 in 1864; it did not enact the second look statutes until 1995, more than 100 years later. 1995 Or Laws, ch 422, §§ 52-56. Thus, the relevant question, as relator sees it, is the legislature's intent in 1995. Relator argues that, when the legislature adopted the second look process in 1995, it did not provide for an automatic stay during the pendency of an appeal pursuant to ORS 420A.203 and did not intend that a preliminary order of conditional release be subject to an automatic stay under ORS 138.160.

The state does not take issue with the enactment history on which relator relies, and it acknowledges that the 1864 Legislative Assembly could not have had second look proceedings in mind when it enacted the statute now codified as ORS 138.160. However, the state argues, when the legislature enacted that statute, it used wording that imposes an automatic stay in all criminal proceedings, including later-enacted criminal proceedings such as second look proceedings.

The state is correct that ORS 138.160 is broadly worded. Looking at its first phrase alone, it appears to govern all appeals "taken by the state." ORS 138.160. However, as the state acknowledges, ORS 138.160 then goes on to provide that such appeals stay "the effect of the judgment or order in favor of the defendant," indicating that the judgment or order to which the statute applies must be a judgment or order in a case in which the parties are the state and a "defendant"—generally a criminal action.

We also glean from the statute's text a further limitation on the nature of the judgment or order to which ORS 138.160 applies: ORS 138.160 provides that "[a]n appeal taken by the state stays the effect of *the* judgment or order in favor of the defendant ***." (Emphasis added.) "The" judgment or order to which the statute refers must be the particular judgment or order from which the state takes its appeal.

An examination of the 1864 version of the automatic stay provision confirms that interpretation. In 1864, Section 235 of the Criminal Code of the Deady Code provided:

"An appeal taken by the state, if taken within the term at which the judgment or order appealed from is given or made, stays the effect of *such* judgment or order in favor of the defendant, so that his bail or money deposited in lieu thereof, is holden for the appearance and surrender of the defendant, until the final determination of the appeal and the proceedings consequent thereon, if any; but if the defendant be in custody, he may, in the discretion of the court, be admitted to bail, pending the appeal, on his own undertaking."

General Laws of Oregon, Crim Code, ch XXIII, § 235, p 481 (Deady 1845-1864) (emphasis added). Under that predecessor version of ORS 138.160, a state's appeal stays the effect of *such* judgment or order, and the word "such" refers back to the judgment or order appealed from. Although the current version of the statute no longer uses the word "such," its use of the word "the" performs the same function, and we conclude that the stay that the current version provides is a stay of the "effect" of the judgment or order from which the state appeals.

        Accordingly, the parties correctly focus their arguments on whether the automatic stay provision of ORS 138.160 applies to the preliminary order of conditional release from which the state appeals. For the reasons that follow, we conclude that it does not.

        First, as explained below, the preliminary order of conditional release from which the state appeals was not issued in the kind of proceeding to which ORS 138.160 applies—a criminal action in which the parties are the state and a "defendant." In a second look hearing under ORS 420A.203, the parties are the eligible "person" and the state. ORS 420A.203(3)(a). Although an eligible "person" likely would have been a defendant in the underlying criminal action in which the "person" was convicted and sentenced, the statute does not use that criminal designation to refer to those who are eligible for, or are parties to, a second look hearing.[5]

        Neither is a second look hearing a proceeding in which a defendant is prosecuted for a crime. The purposes and procedures for a second look hearing are different from those for a criminal action. In a criminal action, the state seeks to prove that a defendant committed a crime; a defendant has a right to trial by jury, and the state must prove the defendant's guilt beyond a reasonable doubt. In a second look hearing, the eligible person seeks to prove that he or she has been rehabilitated; the hearing is before the court, and the standard of proof is clear and convincing evidence. ORS 420A.203(3)(k). Thus, although a second look hearing is certainly related to a criminal action, it is not itself a criminal action subject to ORS 138.160.

        Additionally, we have no reason to think that the legislature intended ORS 138.160 to apply to orders in proceedings that are related to, but are not themselves, criminal actions. In other circumstances in which a proceeding is related to, but is not itself, a proceeding in which a

_____

    [5] We note that, in this case, the pleadings in the second look proceeding were filed using the case number in the underlying criminal action. Relator was the defendant in that underlying action and, in the trial court's preliminary order of conditional release, was designated as the "defendant," not as an eligible "person." However, we look to the statute, rather than to the trial court's practice, in determining legislative intent.

defendant is being prosecuted for a crime, the legislature has not relied on ORS 138.160 to determine the effect of a judgment or order during the pendency of a state's appeal. Instead, the legislature has enacted separate provisions addressing that issue. For instance, ORS 138.650 permits the state to appeal a judgment in a post-conviction proceeding, and ORS 138.650(3) specifically provides the circumstances under which the effect of such a judgment will be stayed. Similarly, ORS 147.535 grants the state standing to appeal an order in a victims' rights case, and ORS 147.542 provides a renewable 21-day stay in such cases for "all matters that directly impact, or are directly impacted by, the order on appeal." ORS 147.542(1).

Also significant is the fact that this court and the Court of Appeals have construed various appeal provisions found in ORS chapter 19, and not those found in chapter 138, as applicable to proceedings that are related to underlying criminal proceedings but are not themselves criminal in nature. *See, e.g.*, *State v. K.P.*, 324 Or 1, 921 P2d 380 (1996) (proceeding to set aside conviction and seal records is not criminal action and not appealable under ORS chapter 138; it is a "special statutory proceeding" appealable under *former* ORS 19.010(4) (1995), *renumbered as* ORS 19.205(5) (2003)); *Moen v. Washington County*, 86 Or App 639, 740 P2d 802 (1987) (motion for return of court-held funds, while made in criminal proceeding, is in nature of civil proceeding and *former* ORS 19.010(2)(c) (1995), *renumbered as* ORS 19.205(3)(2003), governs);[6] *but see [State v. Johnson](#)*, 254 Or App 447, 295 P3d 677 (2013) (post-judgment motion for DNA testing not appealable under ORS 19.205(3)).

There is also a second reason for our conclusion that ORS 138.160 is inapplicable to preliminary orders of conditional release. As we will explain, a preliminary order of conditional release does not have the type of "effect" in favor of a defendant that ORS 138.160 is intended to stay.

The history of ORS 138.160, once again, provides a starting point for our analysis. As noted, ORS 138.160 was

___

[6] ORS 19.205 was also amended in 2003, but the amendments do not affect our analysis.

originally enacted as section 235 of the Criminal Code of the Deady Code. Another section of the code—Section 226— prescribed the circumstances in which the state was permitted to appeal. Section 226 permitted the state to take an appeal from "the judgment or order of the circuit court upon a judgment for the defendant on a demurrer to the indictment," and from "an order of the court, arresting the judgment." General Laws of Oregon, Crim Code, ch XXIII, § 226, p 480 (Deady 1845-1864). Section 235 of the Criminal Code of the Deady Code provided for an automatic stay such that, if the defendant were not in custody, then the defendant would remain free, subject only to existing security provisions that would remain in effect pending appeal. However, if the defendant were in custody, then the defendant would remain incarcerated unless the trial court determined that the defendant should be released pending appeal. Because the state could appeal only judgments and orders that had an immediate effect on a defendant's custodial status, the legislature enacted stay provisions that determined the effect of an appeal on the defendant's custodial status.

The effect that a preliminary order of conditional release has on an eligible person is different. When the court enters such an order, there is no immediate effect on an individual's custodial status. Rather, what follows is the second step of the second look process—the preparation and approval of a proposed release plan. Only at the end of that process may an eligible person be released from custody. Certainly, a preliminary order of conditional release is favorable to an eligible person, but it does not have the immediate effect on an eligible person's custodial status that ORS 138.160 addresses.[7]

The state does not contest the historical fact that, as originally enacted, the automatic stay provision in Section 235 of the Criminal Code of the Deady Code addressed the effects of judgments and orders that the state could appeal under Section 226, and that those judgments and orders had

---

[7] Neither does a preliminary order of conditional release under ORS 420A.203 have a direct effect on the department. It is the sentencing court's direction to the department under ORS 420A.206(1), together with the requirements set out in that statute, that impose the obligations to prepare and submit a proposed release plan.

a direct effect on a defendant's custodial status. The state argues, however, that the "effect" of the judgment or order in favor of the defendant to which ORS 138.160 now refers is not by its terms limited to an effect on custodial status, and the state is now permitted to take appeals in circumstances in addition to those in place in 1864. As a result, the state contends, the automatic stay provided by ORS 138.160 now applies to effects beyond those effects on custodial status to which it was originally intended to apply.

The problem with that argument, however, is that, as written, ORS 138.160 permits a trial court to release a defendant who is in custody during the pendency of an appeal. Again, the text of ORS 138.160 provides:

> "An appeal taken by the state stays the effect of the judgment or order in favor of the defendant, so that the release agreement and, if applicable, the security for release, is held for the appearance and surrender of the defendant until the final determination of the appeal and the proceedings consequent thereon, if any; but if the defendant is in custody, the defendant may be released by the court subject to ORS 135.230 to 135.290, pending the appeal."

The final clause of ORS 138.160 provides, as the state terms it, an "escape clause." Under that escape clause, a trial court may release a defendant from custody pending resolution of a state's appeal. But if ORS 138.160 applies to a preliminary order of conditional release entered pursuant to ORS 420A.203, then so does its escape clause—and it is simply not plausible that the legislature intended that result.

That is so because application of the escape clause to preliminary orders of conditional release would be inconsistent with the structure and function of the second look process. ORS 420A.206 provides an elaborate process for the preparation of a release plan and for the release of an eligible person under conditions crafted by the department and approved by the trial court, or crafted by the trial court itself. It permits an eligible person to be released from custody only when a final order of conditional release has been entered. ORS 420A.206(2). It is clear that the legislature did not intend that a trial court release an eligible person from

custody at the first step of a second look proceeding when a release plan is not yet in place.[8] It follows that the legislature also did not intend the escape clause or ORS 138.160 to apply to a preliminary order of conditional release under ORS 420A.203.

It also follows that the legislature did not intend ORS 138.160 to apply to the department's obligation to prepare and submit a release plan under ORS 420A.206(1). If we consider those obligations to be an "effect" of a trial court's preliminary order of conditional release, then—because we have concluded that ORS 138.160 does not apply to such orders—we also conclude that that statute does not apply to the department's obligations to prepare and submit a release plan.

If, instead, we consider those obligations to be independent obligations, we also conclude that ORS 138.160 does not apply to them, but for different reasons. The first is that ORS 138.160 stays only appealable judgments and orders, and a trial court's direction to the department to prepare and submit a proposed release plan is not itself an appealable order. No statute grants the state authority to appeal from such a direction.[9]

A second reason is that a trial court's direction to the department to prepare a proposed release plan is not an issue that is subject to review in an appeal of another appealable order. ORS 420A.203(6) grants the state authority to appeal from a preliminary order of conditional release, but review is limited to claims that the disposition was not authorized by ORS 420A.203, that the court failed to comply with requirements of that section, or that the findings of the court were not supported by substantial evidence in the record. ORS 420A.206(6) grants the state authority to appeal from a final order of conditional release, but limits

---

[8] In this case, relator argued in the trial court that ORS 138.160 did not apply to the preliminary order of conditional release, but that if it did, the court should release him from custody under its "escape clause." The court denied relator's motion, and relator does not challenge that ruling.

[9] In this case, the trial court's direction to the department was included in the trial court's order of conditional release, and the trial court ordered, rather than directed, the department to prepare a proposed plan of release. Those facts do not make the court's direction appealable.

review of such an order to claims that the court failed to comply with the requirements of law in ordering the conditional release. No statute permits an appellate court to review the trial court's issuance of a direction to the department under ORS 420A.206(1).

Finally, although ORS 420A.203(6) provides for an appeal of a preliminary order of conditional release, it makes the department's obligations to prepare and submit a release plan subject to statutory deadlines that do not, by their terms, vary based on whether such an appeal is taken. For example, after a court enters a preliminary order of conditional release, the court must direct the department to submit a release plan "no later than 45 days after *receipt* of the court's direction to prepare the plan." (Emphasis added.) ORS 420A.206(1)(a). That statute does not permit the department to wait to submit a release plan until 45 days after the *effective date* of a court's preliminary order of conditional release; neither does it provide for a stay of the department's obligation. We infer from that structure that the legislature did not intend that the automatic stay under ORS 138.160 apply to the department's obligations to prepare and submit a release plan.

That conclusion does not mean, however, that there may not be other authority that permits a trial court, on request, to exercise discretion to stay the department's obligations. ORS chapter 19 includes provisions that may permit the trial court to grant a stay,[10] and, as this court noted in 1919,

> "[i]t is the general rule that either the lower or appellate court, according to the circumstances, has inherent power to grant a stay of proceedings pending an appeal even where there is no statute entitling a party to such stay. Where the right to a stay is entirely regulated by statute, or where the statute prescribes the conditions upon which it may be obtained or allowed, the courts cannot grant a stay of proceedings in a case which is not within the statute, or in the absence of compliance with the prescribed conditions."

---

[10] *See* ORS 19.350 (permitting party to seek discretionary stay).

*Helms Groover & Dubber Co. v. Copenhagen*, 93 Or 410, 416, 177 P 935 (1919).[11] We limit our decision in this case to the narrow question presented and decide only that the statute on which the department relies—ORS 138.160—does not impose an automatic stay. We do not address whether the trial court has authority to consider or enter a stay pursuant to other statutory authority or as an exercise of its inherent authority.

Peremptory writ of mandamus to issue. The Department of Corrections shall prepare a proposed release plan and submit that plan to the circuit court in accordance with ORS 420A.206(1)(a). The plan is due 45 days from the date of issuance of the peremptory writ of mandamus.

---

[11] We also note that ORS 420A.203(4)(a)(B) permits the trial court to order that the person be conditionally released "at such time as the court may order." That provision may, by implication, grant the court authority to vary the timelines that apply in a second look proceeding.